## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT


|  |  |  |
|---|---|---|
| JOSEPH L. PAUL, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:11-CV-0081 (JCH) |
| | : | |
| BANK OF AMERICA, N.A. | : | |
| Defendant. | : | NOVEMBER 16, 2011 |
| | : | |


### AMENDED RULING RE:
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 22)


**I.    INTRODUCTION**

Plaintiff Joseph L. Paul brought this action in state court against his former

employer, Bank of America, N.A. ("Bank of America").  Paul was first employed by Fleet

in 1968, then by Bank of America as a result of a merger in 2004.  He remained so

employed until July 23, 2007, when he was terminated.

In July 2008, Paul filed a Complaint against Bank of America in federal court,

alleging that his termination violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.,

and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-58, 46a-

60(a)(1) and (a)(4), and further that Bank of America's actions constituted fraudulent

misrepresentation and a breach of the covenant of good faith and fair dealing under

Connecticut law.  See  Paul v. Bank of Am., No. 3:08CV1066(JBA), 2010 WL 419405,

at *1 (D. Conn. January 29, 2010).  Summary judgment was granted in favor of Bank of

America on all federal and state statutory claims, and the court declined to exercise supplemental jurisdiction over Paul's remaining state common law claims.  Id. at *12.

In January, 2011, Paul filed the current action in state court.  Bank of America removed the case to this court based on diversity jurisdiction, and it now moves for summary judgment.  See generally Def.'s Mot. for Summ. J. (Doc. No. 22).

## II.    BACKGROUND

Paul was born in 1947, and is African American.  He began working for FleetBoston Financial Corporation ("Fleet") as a computer operator in 1968, and worked his way up to the position of Vice President in Hartford, Connecticut, and later to Senior Vice President in Albany, New York.  Pl.'s Local Rule 56(a)(2) Statement ("Pl.'s L.R. 56(a)(2) Stmt.") (Doc. No. 28-1) ¶ 1; Def.'s Local Rule 56(a)(1) Statement ("Def.'s L.R. 56(a)(1) Stmt.") (Doc. No. 25) ¶ 1.  He worked as a Senior Vice President and senior operations manager in Albany until 2004.  Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 2-6.  In late 2003 or early 2004, he was offered the position of Senior Client Manager, in Hartford, CT, where he would manage the bank's relationship with the state of Connecticut, and the Connecticut Treasurer in particular.  Pl.'s L.R. 56(a)(2) Stmt. ¶ 26; Def.'s L.R. 56(a)(1) Stmt. ¶ 26.  Paul claims that Fleet agreed to give him training and an opportunity to learn to perform the new position.  Pl.'s L.R. 56(a)(2) Stmt. ¶ 8; Def.'s L.R. 56(a)(1) Stmt. ¶ 8.  Paul also claims that he was offered the position in Hartford because he is African American, and Fleet wanted an African American to interface with the Connecticut State Treasurer, who likes to do business with companies that have diverse employees.  Pl.'s L.R. 56(a)(2) Stmt. ¶ B9; Def.'s Reply to Pl.'s L.R. 56 Stmt. ¶ 9 (denying and objecting to this allegation).

Shortly after Paul began in his new position in early 2004, Fleet merged into Bank of America.  Pl.'s L.R. 56(a)(2) Stmt. ¶ 10; Def.'s L.R. 56(a)(1) Stmt. ¶ 10.  Paul remained in his job after the merger, and he claims that he was told that he would have the same opportunity to learn his new job.  Pl.'s L.R. 56(a)(2) Stmt. ¶ 11; Def.'s L.R. 56(a)(1) Stmt. ¶ 11.  Paul had several supervisors and attended some formal training after he moved to Hartford.  Pl.'s L.R. 56 (a)(2) Stmt. ¶¶ 16, 18; Def.'s L.R. 56(a)(1) Stmt. ¶¶ 16, 18.  Both parties were satisfied with Paul's performance as Senior Client Manager in 2005 and part of 2006.  Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 32-33; Def.'s L.R. 56(a)(1) Stmt. ¶¶ 32-33.  In 2006, Margaret Scopelianos took over as Paul's supervisor, and she was critical of his 2006 job performance.  See Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 24, 45; Def.'s L.R. 56(a)(1) Stmt. ¶¶ 24, 45.  Scopelianos fired Paul on July 23, 2007, citing failure to meet performance goals.  Pl.'s L.R. 56(a)(2) Stmt. ¶ 85; Def.'s L.R. 56(a)(1) Stmt. ¶ 85.

## III.    STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed.R.Civ.P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed.R.Civ.P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

IV.    DISCUSSION

A.    Breach of Implied Covenant of Good Faith and Fair Dealing

Paul's Complaint alleges that Bank of America "violated the implied covenant of good faith and fair dealing that all employers are bound to follow." Compl. (Doc. No. 1-1) ¶ 40. Bank of America argues that Paul has abandoned this claim by failing to address it in his Opposition to the Motion for Summary Judgment. Def.'s Reply to Pl.'s Opp'n to Mot. for Summ. J. ("Def.'s Reply") (Doc. No. 29) at 5-6. When a party "offer[s] no response" to its opponent's motion to dismiss a claim, that claim is abandoned. See Molinari v. Bloomberg, 564 F. 3d 587, 609 n.15 (2d Cir. 2009); see also Albert v. City of Hartford, 529 F. Supp. 2d 311, 328 (D. Conn. 2007). Paul's Brief in Opposition to

4

Motion for Summary Judgment calls this case "a state law action for promissory estoppel," and it does not address or even mention his claim for breach of implied covenant of good faith and fair dealing.  See generally Pl.'s Brief in Opp'n to Mot. for Summ. J. ("Pl.'s Br. in Opp'n") (Doc. No. 28).   Because Paul has failed to address the claim of breach of implied covenant of good faith and fair dealing in opposition to summary judgment, it appears to this court that he has abandoned it.

Even were the breach of the implied covenant claim not abandoned, as Bank of America contends, it would be precluded both by statutory remedies and by res judicata.  Bank of America argues that Paul's claim for breach of implied covenant of good faith and fair dealing rests on public policy violations for which statutory remedies exist: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.; and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-58, 46a-60(a)(1), (a)(4).  Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem. In Supp.") (Doc. No. 23) at 12.

Connecticut has recognized a cause of action for discharged at-will employees for breach of implied covenant of good faith and fair dealing only when the discharge is for a reason that violates public policy.  See Cowen v. Fed. Express Corp., 25 F. Supp. 2d 33, 37 (D. Conn. 1998); Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 480 (1980).  Such a claim may not stand, however, where the employee has a statutory remedy to the public policy violation.  See Aukstolis v. AHEPA 58/Nathan Hale Senior Center, 579 F. Supp. 2d 314, 322 (D. Conn. 2008); Canty v. Rudy's Limousine, No. 3:04CV1678(CFD), 2005 WL 2297410, at *5 (D. Conn. Sept. 15, 2005).  It appears from Paul's Complaint that the basis for his claim of breach of the implied covenant of good

faith and fair dealing is misrepresentation.  See Compl. ¶¶ 36-40.  Because

misrepresentation is legally insufficient to support such a claim, the court examines

Paul's complaint for other allegations of violations of public policy on which the claim

might be based.  The public policy violation suggested by the record is race

discrimination.  See, e.g., Pl.'s L.R. 56(a)(2) Stmt. ¶ B9 (claiming that he was offered the

position in Hartford due to his race).  The existence of statutory remedies for race

discrimination, however, precludes a claim of breach of the implied covenant of good

faith and fair dealing based on race discrimination.  See Aukstolis, 579 F. Supp. at 322;

42 U.S.C. §§ 2000e et seq; Conn. Gen. Stat. §§ 46a-58, 46a-60(a)(1), (a)(4).

　　　　Further, because summary judgment was granted against Paul's Title VII and

CFEPA claims in his first suit, Bank of America argues that Paul's current claim for

breach of implied covenant of good faith and fair dealing is precluded by res judicata.

Def.'s Mem. In Supp. at 12.  "Under the res judicata doctrine, 'a final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were

or could have been raised in [a previous] action.'"  Centra Mortg. Holdings Ltd. v.

Mannix, 18. F. Supp. 2d 162, 165 (D. Conn. 1998) (citing Federated Dept. Stores, Inc.

v. Moitie, 452 U.S. 394, 398 (1981)).  Bank of America was granted summary judgment

on Paul's race and age discrimination claims under Title VII, the ADEA, and the CFEPA

in the earlier case between the parties.  See Paul v. Bank of Am., No.

3:08CV1066(JBA), 2010 WL 419405, at *11-12 (D. Conn. January 29, 2010).  As

discussed above, Paul's claim for breach of implied covenant of good faith and fair

dealing appears to be based on misrepresentation, but because such a basis is legally

insufficient, the court considers the public policy violations alleged by the complaint,

which relate to race discrimination by Bank of America.  Because a final judgment on

the merits has already been entered against Paul as to his race discrimination claims

against Bank of America, he may not raise them as an essential element of a claim for

breach of the implied covenant of good faith and fair dealing.

  B. <u>Fraudulent Misrepresentation</u>

  Bank of America correctly observes in its Reply Memorandum that Paul has

abandoned his fraudulent misrepresentation claim.  <u>Def.'s Reply</u> at 5-6.  Because Paul

does not address fraudulent misrepresentation in his Opposition Brief at all, he is

deemed to have abandoned the claim.  <u>See, e.g.</u>, <u>Coger v. Connecticut</u>, 309 F. Supp.

2d 274, 280 (D. Conn. 2004) (considering claims abandoned where plaintiff failed to

respond to an argument defendant raised for summary judgment); <u>see also</u> <u>supra</u>

discussion at p. 4.  Therefore, summary judgment as to the claim of fraudulent

misrepresentation is appropriate.[1]

  C. <u>Promissory Estoppel</u>

  The only legal claim that Paul addresses in his Opposition is promissory

estoppel.  <u>Pl.'s Br. in Opp'n</u> at 1 ("This is a state law action for promissory estoppel.").

Bank of America argues that Paul's promissory estoppel claim is precluded because

---

[1] Bank of America also attacks Paul's fraudulent misrepresentation claim as unsupported by evidence and barred by the statute of limitations.  <u>Mem. in Supp. of Mot. for Summ. J.</u> 6-9.  Fraudulent misrepresentation claims are governed by a three year statute of limitations under Conn. Gen. Stat. § 52-577, which begins to run on the date of the misrepresentation.  <u>Fichera v. Mine Hill Corp.</u>, 207 Conn. 204, 212 (1998); <u>Day v. General Electric</u>, 15 Conn. App. 677, 683 (1988).  Conn. Gen. Stat. § 52-592 saves certain claims timely commenced but dismissed for lack of jurisdiction, including state law claims over which a federal court declines to exercise supplemental jurisdiction.  <u>See</u> <u>Daoust v. McWilliams</u>, 49 Conn. App 715, 720-21 (1998) (allowing plaintiff to pursue state law claims dismissed without prejudice in federal court).  Paul's fraudulent misrepresentation claim, however, accrued when the alleged false promise induced Paul's move from Albany to Hartford, in late 2003 or early 2004.  Def.'s L. R. 56(a)(1) Stmt. ¶¶ 3, 8.  Thus, this claim appears to have been time-barred when first filed on July 16, 2008, and therefore would still be time-barred today were it not abandoned.  As this claim is both abandoned and apparently time-barred, the court does not address Bank of America's argument that it lacks evidentiary support.

Paul did not identify or plead such a claim earlier, because it is barred by a three-year statute of limitations, and "because Plaintiff cannot prove the essential elements of such a claim."  Def.'s Reply at 2-3.  Each of these arguments is addressed in turn.

 1. This Claim is Raised by the Pleadings

Bank of America argues that, because Paul did not allege promissory estoppel as a cause of action in his Complaint and did not identify it in the Rule 26(f) Report of the Parties' Planning Meeting, it was raised for the first time in his Opposition and should therefore be barred.  Under Federal Rule of Civil Procedure 8(a), a sufficient complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8, which "raise[s] a right to relief above the speculative level."  Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Therefore, where a complaint includes allegations that support a legal claim, that legal claim should not be barred. See, e.g., Hall v. Family Care Home Visiting Nurse & Home Care, 696 F. Supp. 2d 190 (D. Conn. 2010), reconsidered in part by No. 3-07-cv-1911(JCH), 2010 WL 1487871 (D. Conn. Apr 12, 2010); Risica ex rel. Risica v. Dumas, 466 F. Supp. 2d 434, 440 (D. Conn. 2006) (finding that a complaint raised a claim "if liberally read," and therefore that the court would address the merits of that claim on defendants' motion for summary judgment).

To state a claim for promissory estoppel, a plaintiff must allege that: (1) the defendant made a clear and definite promise; (2) the promisor could reasonably expect that his promise would induce reliance by the promisee; (3) the promise does in fact induce reliance by the promisee; and (4) the enforcement of the promise is necessary to

avoid injustice.  See Stewart v. Cendant Mobility Servs., 267 Conn. 96, 104 (2003);

Restatement (Second) of Contracts § 90 (1981).  Paul's Complaint alleges that Bank of

America's predecessor, Fleet, made promises to Paul about the training and

evaluations that Paul would receive if he accepted the position in Hartford, that Fleet

made these promises in an effort to persuade him to accept a position for which Paul

believed he was not qualified, that Paul relied on those promises in accepting the

position, and that defendant's failure to abide by these promises caused Paul to lose his

job of thirty-nine years.  Compl. ¶¶ 8, 39.  Because Paul's Complaint states a claim of

promissory estoppel, the court will address Bank of America's other arguments.

    2.  Factual Issues Exist as to the Statute of Limitations

   Bank of America next argues that Paul's promissory estoppel claim is barred by

the statute of limitations.  Def.'s Reply at 2.  Executed contracts, whether oral or not, are

governed by a six-year statute of limitations.  See John H. Kolb & Sons, Inc. v. G & L

Excavating, 76 Conn. App. 599, 610, cert denied, 264 Conn. 919 (2003) (explaining that

the dispositive inquiry in determining the statute of limitations in an action for breach of

contract is whether the contract is executory); see also Torrington Farms Ass'n v.

Torrington, 75 Conn. App. 570, 577 (2003) (finding the same to apply under a theory of

promissory estoppel as any other action for breach of contract).  The three-year statute

of limitations for oral contracts under Conn. Gen. Stat. § 52-581 applies only when

"neither party has fully performed its contractual obligations."  See John H. Kolb, 76

Conn. App. at 610.

   Bank of America argues that the alleged agreement between the parties was

executory, describing the following terms: "[Paul] agreed to accept the promotion to

Client Manager and all of the attendant benefits associated with that promotion, as long as Defendant's predecessor and later Defendant promised to provide future training for the position until some indefinite date in order to allow him to learn the position." Def.'s Reply at 3. Based on Bank of America's own description, Paul fulfilled his obligations and therefore executed his side of the agreement when he accepted the position in Harford. See Tierney v. American Urban Corp., 170 Conn. 243, 249 (contract was executed when plaintiff fulfilled his contractual obligations). Thus, Bank of America describes an executed contract. Defendant's Motion for Summary Judgment shows at least a genuine dispute as to the nature of the agreement, and at most a clear statement by Bank of America that the agreement was in fact executed. For the purposes of this Ruling, therefore, this court will therefore apply the six-year Statute of Limitations under Conn. Gen. Stat. § 52-576.

Connecticut courts have clearly established that a cause of action for breach of contract accrues "at the time the breach of contract occurs, that is, when the injury has been inflicted." Torringford Farms, 75 Conn. App. at 577, quoting Tolbert v. Connecticut General Life Ins. Co., 257 Conn. 118, 124-25 (2001). As Bank of America acknowledges, the latest date Paul's claim could have accrued is at his termination on July 23, 2007.[2] Pl.'s L.R. 56(a)(2) Stmt. ¶85; Def.'s Reply at 3. Because this case was filed in January 2011, within six years of Paul's termination, the court denies summary judgment on the statute of limitations for Paul's promissory estoppel claim.

---

[2] Paul's termination certainly constitutes injury. He also could have been injured earlier, by Bank of America's alleged failure to train him. The parties do not argue this point, and the view of the facts most favorable to the plaintiff would place the injury at the date of termination.

10

3.      Factual Issues Exist as to the Promise

Bank of America argues that Paul's promissory estoppel claim is insufficient as a matter of law because the promise Paul alleges is not sufficiently clear and definite to support liability.  The existence of a promise sufficient to support contractual recovery is a question of fact.  See Stewart v. Cendant Mobility Servs., 267 Conn. 96, 106 (2003) "(W]hether a representation rises to the level of a promise is generally a question of fact, to be determined in light of the circumstances under which the representation was made").  The nature of the agreement between Paul and Fleet is disputed.  The parties agree that Paul would be working as a client manager, that he would be trained, and that he would be given ample time to learn the position.  Pl.'s L.R. 56(a)(2) Stmt. ¶ 8. Paul further claims that he accepted the position based on the Bank's promise that he would receive proper training.  Pl.'s L.R. 56(a)(2) Stmt. ¶ 8; Def.'s L.R. 56(a)(1) Stmt. ¶ 8.  Based on this evidence, a reasonable jury could find a sufficiently promissory statement on which Paul reasonably relied.  Cf. Stewart, 267 Conn. at 106 (holding as sufficiently promissory an employer's statement that plaintiff's husband's employment with a competitor would not affect plaintiff's employment).  Because Paul has come forward with evidence sufficient for a reasonable jury to find that Fleet made promises that support liability, Bank of America's Motion for Summary Judgment is denied as to this promissory estoppel claim.

V.      **CONCLUSION**

For the foregoing reasons, Bank of America's Motion for Summary Judgment **(Doc. No. 22)** is **GRANTED** as to Paul's claims for breach of implied covenant of good

faith and fair dealing and fraudulent misrepresentation, and **DENIED** as to Plaintiff's claim for promissory estoppel.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of November, 2011.


      /s/ Janet C. Hall

Janet C. Hall
United States District Judge